IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

```
┌─────────────────────────┐
│        FILED            │
│                         │
│      NOV 17 2008        │
│                         │
│ CLERK, U.S. DISTRICT COURT │
│        NORFOLK, VA       │
└─────────────────────────┘
```

DENISE REAGAN RUSSELL,
individually, and as Executor
of Daniel Sean Reagan,
deceased,

        Plaintiff,

v.                                    Case No. 4:07cv130

NATIONWIDE INSURANCE COMPANY,

        Defendant.

## OPINION AND ORDER

Plaintiff, Denise Reagan Russell ("Russell"),[1] individually and as executor of the estate of Daniel Sean Reagan ("Reagan"), deceased, brings this diversity action against Defendant, Nationwide Insurance Company ("Nationwide"), alleging that she is entitled to benefits under a life insurance policy that Reagan entered into with Nationwide and that Nationwide acted in bad faith in refusing to disburse benefits under the policy.  Russell seeks $1,000,000 in damages under the policy as well as attorneys' fees for Nationwide's alleged bad faith.  Presently before the Court are four motions:  Nationwide's motion to dismiss Russell's bad faith claim, Nationwide's motion to strike, Russell's motion for summary judgment, and Nationwide's motion for summary judgment.  After

---

[1] Russell is formerly known as "Denise Renee Reagan," and brought the instant action under that name.  Plaintiff's Amended Complaint reflects the name change.  By order entered November 17, 2008, the Court has directed the caption of the case to reflect this name change.

considering the motions, counsel's accompanying memoranda, and oral arguments before the Court, and for the reasons set forth herein, the Court DENIES Nationwide's motion to dismiss Russell's bad faith claim, Nationwide's motion to strike, and Russell's motion for summary judgment; and the Court GRANTS IN PART AND DENIES IN PART Nationwide's motion to summary judgment.

## I.  Facts and Procedural History

On September 20, 2002, Nationwide issued a life insurance policy (Policy No. 034474700) (the "policy") to Reagan as the named insured.  Final Pretrial Order 2.[2]  The death benefit under the policy was $1,000,000.  Id.  In the Application for Life Insurance, which became part of the policy, id., Reagan named Russell, his wife at the time, as the primary beneficiary.  Amended Compl. Ex. B, at 21.  Premiums were due quarterly.  Id. at 20.  The policy was an individual policy and was obtained through the office of H.P. Lucas & Sons, Inc., an insurance sales agent.  Final Pretrial Order 2.

At the time of issuance, Reagan resided at 1309 Seaford Rd., Seaford, Virginia.  Id.  In December 2002, Reagan moved to 324 Claxton Creek Rd., Seaford, Virginia, where he resided until his death in November 2006.  Id.  The address change was noted by Nationwide, which "generated, addressed, and mailed two change of

---

[2] In the Final Pretrial Order, the parties stipulated to certain undisputed facts.  Citations to that order are to those stipulations.

2

address of record letters dated December 6, 2002." Id. From the inception of the policy through June 20, 2003, Reagan received each quarterly billing statement ("Life Billing Statement") at his residence at the time. Id. at 3. Each Life Billing Statement included the following language:

> CONDITIONS: Premiums are payable to Nationwide on or before the due date indicated. The premium amount shown is the scheduled amount due on this specific due date. Premiums not paid when due are in default. A grace period of 31 days is allowed for the payment of premiums. At the end of the grace period (except for rights provided by the policy or by statute, where automatic premium loan or non-forfeiture provisions may apply) this policy will terminate as of the unpaid premium due date rendering the policy void and premiums defaulted. This premium notice does not waive any prior termination.

Def. Mot. SJ Ex. 2.

Beginning in March 2003, Reagan's employer, Seaford Baptist Church, paid the premiums due under Reagan's policy as a salary deduction to Reagan. Final Pretrial Order 2. Seaford Baptist Church paid the premiums dated March 20, 2003 through December 20, 2005. Id. To reflect that Seaford Baptist Church was paying Reagan's premiums, "Nationwide generated, addressed, and mailed two change of address of record letters dated June 4, 2003" to Reagan's residence and to Seaford Baptist Church.[3] Id. at 3. "After June 2003, all Life Billing Statements for this policy were

---

[3] Plaintiff initially disputed that Reagan ever requested his address be changed to his employer's address and that Nationwide properly generated two change of address of record letters. The parties' stipulation on this matter in the Final Pretrial Order, however, has resolved this issue.

mailed to Daniel S. Reagan, c/o David Phillips, P.O. Box 207, Seaford, Virginia 23696-0207, until the policy lapsed for non-payment." Id. David Phillips ("Phillips") was the administrator of Seaford Baptist Church. Id.

Reagan left the employment of Seaford Baptist Church in December 2005. Def. Mot. SJ Ex. 13. The last premium Seaford Baptist Church paid for Reagan's policy was the December 2005 policy premium. Id. On at least one occasion after Reagan left the church's employment, Phillips told Reagan that Seaford Baptist Church would no longer pay Reagan's policy premiums. Id. In February 2006, Phillips personally handed mail to Reagan that Phillips had received from Nationwide. Final Pretrial Order 3. While Phillips did not open the mail, and thus did not know what was inside the envelope, Def. Mot. SJ Ex. 13, the "timing of this delivery is consistent with the mailing of the Life Billing Statement dated February 20, 2006." Final Pretrial Order 3. However, Reagan never paid the premium for the policy that was due on March 20, 2006. Id. Reagan did not notify Nationwide that his address had changed at any time after June 2003. Id.

Nationwide alleges that it sent a Life Billing Statement to Seaford Baptist Church at the address of record – the church's P.O. Box – under the policy on April 10, 2006. That statement notes that the premium was past due and contains the same notice – that failure to pay premiums in a timely manner may result in default –

4

contained in each prior Life Billing Statement.  Def. Mot. SJ Ex.
9.  That statement also contains the following language:

> **THIS IS AN IMPORTANT REMINDER** - Your premium is past due
> and the grace period will expire APR 20, 2006.  If your
> payment is not received in the home office within the
> grace period your policy will lapse effective MAR 20,
> 2006.
>
> On the other hand, to keep this valuable protection you
> may wish to take advantage of the EASY REINSTATEMENT
> OFFER PERIOD.  This period is from APR 20, 2006 to MAY
> 20, 2006.  During this period there is no coverage until
> the past due premium is received in the home office.
> However, upon receipt of the premium, we will waive the
> requirement of a formal reinstatement application.

Id.  Nationwide employees testified by deposition that the April
10, 2006 statement, as well as the prior Life Billing Statements
and subsequent notice of lapse statement, were all generated by a
properly working computer system and mailed through the United
States Postal Service.  Def. Mot. SJ. Exs. 17-21.

Russell disputes that Reagan received the April 10, 2006 past
due Life Billing Statement.  Phillips testified in a deposition
that Seaford Baptist Church would forward to Reagan at his home
address any mail the church received that was addressed to Reagan.
Def. Mot. SJ Ex. 9.  Phillips does not recall, however, any
correspondence for Reagan from Nationwide coming to the church
after February 2006.  Pl. Mot. SJ Ex. E.

Nationwide also alleges that, on May 21, 2006, it sent to
Reagan's address of record at Seaford Baptist Church a statement
notifying Reagan that his policy had lapsed ("Notice of Lapse").

5

Russell also disputes that Reagan ever received the Notice of Lapse. It is not disputed, however, that Reagan's policy lapsed on May 21, 2006. Final Pretrial Order 4. Reagan died on November 14, 2006. Id.

After Reagan died, Nationwide conducted an investigation of Reagan's policy. Pl. Mem. Opp. SJ Ex. F. Kristy Voltz ("Voltz") was the lead claims manager at Nationwide who investigated Reagan's policy. Id. As lead claims manager, part of Voltz's job was to conduct due diligence to determine if insurance policies were properly paid. Id. The first part of the investigation regarding Reagan's policy involved determining whether the policy was still in force at the time of death by checking with Nationwide's "Cyberlife" computer system. Id. After discovering the policy had lapsed, Voltz personally contacted Phillips at Seaford Baptist Church to verify payment. Id. Phillips told Voltz that the church had stopped making payments on Reagan's policy when Reagan left the church's employment and that he had forwarded to Reagan any mail that he received from Nationwide. Id. Voltz also spoke with H.P. Lucas & Sons, Inc., about the matter. Id. After this investigation, Nationwide determined not to pay Russell the death benefit under the policy.

On or about November 7, 2007, Russell filed this action in Circuit Court for the County of York and City of Poquoson, Virginia. Nationwide removed the case to this Court on December

6

11, 2007.  On September 17, 2008, Russell amended her complaint. On September 18, 2008, Nationwide moved to dismiss Count II of the Amended Complaint and moved to strike certain paragraphs from the Amended Complaint.  On September 29, 2008, Russell moved for summary judgment, and on October 10, 2008, Nationwide filed a cross-motion for summary judgment.  These motions are presently before the Court and shall be addressed in turn.

## II.  Discussion

### A.  Motion to Dismiss

Nationwide moves the Court to dismiss Count II of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Nationwide argues that Count II does not meet the requirements of a bad faith claim as set out in CUNA Mut. Ins. Soc'y v. Norman, 375 S.E.2d 724 (Va. 1989).

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).  In considering the motion, the Court accepts the complaint as true and draws all reasonable factual inferences in the plaintiff's favor.  Id. "Accordingly, a Rule 12(b)(6) motion should only be granted if . . . it appears that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Id.

Section 38.2-309 of the Virginia Code provides for plaintiffs to recover reasonable attorneys' fees where an insurer has acted in

7

bad faith in either denying coverage or failing or refusing to make payment to the beneficiary under the insurance policy.  The Supreme Court of Virginia has held that, in analyzing a bad faith claim, courts should ask whether the insurer acted reasonably.  CUNA, 374 S.E.2d at 726-27.  In determining reasonableness, courts should consider

> such questions as whether reasonable minds could differ in the interpretation of policy provisions defining coverage and exclusions; whether the insurer had made a reasonable investigation of the facts and circumstances underlying the insured's claim; whether the evidence discovered reasonably supports a denial of liability; whether it appears that the insurer's refusal to pay was used merely as a tool in settlement negotiations; and whether the defense the insurer asserts at trial raises an issue of first impression or a reasonably debatable question of law or fact.

Id. at 727; see also HHC Associates v. Assurance Co. Of America, 256 F. Supp. 2d 505, 508 (E.D. Va. 2003).  These five questions are non-exclusive factors in determining reasonableness; they are not, as Nationwide seems to argue, elements of a five-part test.  See Styles v. Liberty Mut. Fire Ins. Co., 2006 WL 1890104 at *3 (W.D. Va. July 7, 2006) ("Such a [reasonableness] standard is not amenable to a precise definition because it depends on the circumstances of each individual case.  Due to the vagueness of a reasonableness standard, the CUNA court decided to give guidance to lower courts by listing non-exclusive factors that should be considered.").

Here, Nationwide premises its motion to dismiss only upon

Russell's alleged failure to meet the requirements set out in CUNA. To be sure, Russell's Amended Complaint does not directly address any of the five factors set out in CUNA.  But Russell does not need to allege any of those factors in her complaint to adequately allege bad faith.  Because CUNA sets out factors that a Court may consider, and not elements of a test that a plaintiff must satisfy, a plaintiff does not need to allege those factors to state a prima facie claim of bad faith.  Rather, a plaintiff can simply allege bad faith in a conclusory manner because the basis for a bad faith claim lies in the totality of facts alleged by the plaintiff in the breach of contract claim.[4]  As such, there are any number of ways to prove bad faith – it requires, after all, a determination of reasonableness.

Furthermore, it is questionable whether Russell need assert bad faith as an independent count at all.  A section 38.2-209 bad faith claim sounds in contract, not tort.  HHC Associates, 256 F. Supp. 2d at 508 (citing Aetna Cas. & Sur. Co. v. Price, 146 S.E.2d 220, 228 (Va. 1966)).  Indeed, Va. Code. § 38.2-209 is not an independent cause of action; it is, rather, ancillary to a cause of action for breach of an insurance contract.  See Adolf Jewelers, Inc. v. Jewelers Mut. Ins. Co., 2008 WL 2857191, at *5-6 (E.D. Va. July 21, 2008) ("Section 38.2-209 does not create an independent

---

[4] Here, the Court notes that Count II of Plaintiff's Amended Complaint incorporates by reference the facts alleged in Count I, the breach of contract claim.  Amended Compl. ¶ 59.

9

cause of action."). <u>Adolf Jewelers</u> held that it was sufficient, pursuant to Va. Code § 38.2-209, to allege bad faith in the main breach of contract count and to request attorneys' fees in the prayer for relief. <u>Id.</u> (dismissing without prejudice a separate count alleging bad faith pursuant to section 38.2-209 when the plaintiff had additionally alleged bad faith in another count and had requested attorneys' fees in the prayer for relief).[5]

Therefore, the Court holds that Russell has adequately pleaded her allegation of bad faith, and the Court accordingly DENIES Nationwide's motion to dismiss Count II of the Amended Complaint.

### B. Motion to Strike

Nationwide moves the Court to strike Paragraphs 4, 5, 6, 7, 13, 14, 16, 20, 22, 23, 33, 34, 35, 36, 39, 40, 41, 43, 50, 51, 60, 61, and 62 from Russell's Amended Complaint.[6]

---

[5] The Court need not decide if Russell's bad faith allegation is properly styled as a separate count because Nationwide has not raised the issue. The Court does note, however, that Russell's bad faith allegation is not an independent cause of action, <u>Adolf Jewelers</u>, 2008 WL 2857191, at *5-6, despite Russell styling the allegation as a separate count in the Amended Complaint.

[6] Nationwide's motion to strike is unclear regarding which paragraphs Nationwide wishes the Court to strike from the Amended Complaint. Nationwide states at the beginning of the motion that it "moves to strike Paragraphs 4, 5, 6, 7, 13, 20, 22, 23, 33, 34, 35, 39, 41, 60 and 61, as impertinent and irrelevant to the contract action filed." Def. Mot. Strike 2. Nationwide then proceeds in the substance of its motion to argue that the Court should strike paragraphs 4, 5, 6, 7, 13, 14, 16, 20, 22, 23, 33, 34, 35, 36, 40, 41, 43, 50, 51, 60, 61, and 62. <u>Id.</u> at 3-10. The Court will presume Nationwide seeks to strike the latter set of paragraphs rather than the former set because Nationwide provided individualized and detailed arguments for the latter set.

Rule 12(f) of the Federal Rules of Civil Procedure allows the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  "Rule 12(f) motions are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic."  <u>Waste Management Holdings, Inc. v. Gilmore</u>, 252 F.3d 316, 347 (4th Cir. 2001) (quotation omitted).  Accordingly, "[m]otions to strike are viewed with disfavor and are granted only for egregious violations. Thus, before a motion to strike will be granted, the allegations must be the type envisioned by the rule and prejudicial." <u>Brown v. Institute for Family Centered Services, Inc.</u>, 394 F. Supp. 2d 724, 727 (M.D.N.C. 2005) (citation omitted).  Furthermore, relevance is not a basis to strike paragraphs from a complaint.  Rule 12(f) speaks only to "redundant, immaterial, impertinent, or scandalous" allegations.  A determination of relevance is more properly a question of evidence under Federal Rules of Evidence 401 and 402.

Paragraphs 4, 5, 6, 7, 13, 33, 34, 35, 40, 41, and 60 of the Amended Complaint concern Brent S. Lucas and H. P. Lucas, Nationwide's insurance agents.  Nationwide argues that any reference to the insurance agents is irrelevant.  Evidence that the insurance agents did not receive correspondence regarding Reagan's policy may be material to Russell's claim, however, because the main issue in this case is whether Reagan received notice that his

11

policy was about to lapse.  If Reagan's insurance agent received notice from Nationwide, or otherwise knew, that Reagan had not paid the premium due and that his policy would lapse, it is more probable that Reagan himself had received notice from Nationwide. The allegations set forth in Paragraphs 4, 5, 6, 7, 13, 33, 34, 35, 40, and 41 would appear to be, at this stage, material, and their inclusion in the Amended Complaint is not egregious or prejudicial. See, e.g., Fed. R. Civ. P. 12(f); Brown, 394 F. Supp. 2d at 727.

Paragraphs 14, 16, 20, and 36 of the Amended Complaint concern previous life insurance policies held by Reagan.  Nationwide argues these policies are irrelevant to the current cause of action. Evidence of past life insurance policies, including possible evidence of consistent payment and evidence of receiving notice of lapse, may be material to the current action because it may show a course of conduct of the parties.  If Reagan consistently paid the premiums of his other policies when due, for instance, that may lead to the inference that he did not know the instant policy was about to lapse, or that he never received any notice of lapse from Nationwide.  The allegations set forth in Paragraphs 14, 16, 20, and 36 of the Amended Complaint would appear to be, at this stage, material, and their inclusion in the Amended Complaint is not egregious or prejudicial.  See, e.g., Fed. R. Civ. P. 12(f); Brown, 394 F. Supp. 2d at 727.

Paragraphs 22, 23, 42, 50, and 51 of the Amended Complaint

12

concern Reagan's change of address in June 2003. Nationwide argues the change of address is irrelevant to the current cause of action. Evidence of Reagan's alleged change of address is central to the cause of action, however, because, for Nationwide's notice of lapse to be effective, the notice must have been sent to the correct address.[7] The allegations set forth in Paragraphs 22, 23, 42, 50, and 51 of the Amended Complaint would appear to be, at this stage, material, and their inclusion in the Amended Complaint is not egregious or prejudicial. See, e.g., Fed. R. Civ. P. 12(f); Brown, 394 F. Supp. 2d at 727.

Finally, paragraphs 61 and 62 of the Amended Complaint concern allegations of another Nationwide life insurance policy holder. Nationwide argues that these allegations are irrelevant. Evidence of Nationwide's alleged inconsistent treatment of Reagan and another Nationwide customer may be material in proving Nationwide's alleged bad faith. The allegations set forth in Paragraphs 60 and 61 of the Amended Complaint would appear to be, at this stage, material, and their inclusion in the Amended Complaint is not egregious or prejudicial. See, e.g., Fed. R. Civ. P. 12(f); Brown, 394 F. Supp. 2d at 727.

Accordingly, the Court DENIES Nationwide's motion to strike.

---

[7] As the Court noted, supra, the parties have stipulated to Reagan's June 2003 change of address in the Final Pretrial Order.

C.  Motions for Summary Judgment

Russell and Nationwide each move the Court for summary judgment.

The Court shall grant summary judgment if, viewing the record as a whole, "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-24.  On summary judgment, the Court views "the inferences to be drawn from the underlying facts . . . in the light most favorable to the party opposing the motion."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation omitted).  The non-moving party is required, to defeat summary judgment, "to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Celotex Corp., 477 U.S. at 324 (quotations omitted).

i.  Breach of Contract and Va. Code § 38.2-232

Russell argues that Nationwide was required, pursuant to Va. Code § 38.2-232, to give Reagan notice that his life insurance policy would lapse.  Va. Code § 38.2-232 provides:

**Notice of lapse or pending lapse of certain life and accident and sickness insurance policies**

Every insurer, health services plan, or health care plan that issues a policy, contract, or plan of insurance as defined in §§ 38.2-101 through 38.2-109 shall provide the

14

policy owner, contract owner, or plan owner with written notice prior to the date that the policy, contract, or plan will lapse for failure to pay premiums due.

This section shall not apply (i) to policies, contracts, or plans of group insurance, (ii) where the insurer, health services plan, or health care plan, as a general business practice, provides its policy owners, contract owners, or plan owners with written notice of premiums due, or (iii) where the insurer, health services plan, or health care plan has furnished its policy owner, contract owner, or plan owner with written notice separate from that contained in the policy that the failure to pay premiums in a timely manner will result in a lapse of such policy, contract or plan.

Russell argues that Nationwide must meet the requirements of the first paragraph because the exceptions in the second paragraph only apply to group insurance policies and not to individual policies such as Reagan's. Nationwide argues that the first paragraph's notice requirement does not apply to the instant case because exception (iii) applies.

The Court begins its analysis by looking to the language of the statute. In re JKJ Chevrolet, Inc., 26 F.3d 481, 483 (4th Cir. 1994). The Court will only look beyond the plain meaning of the statute when "there is a clearly expressed legislative intent to the contrary" or when "literal application of the statute would produce an absurd result." Id. at 483-84.

There is not a plain meaning to the second paragraph of Va. Code § 38.2-232; rather, it is, perhaps, the paradigm of a clumsily worded statute. On the one hand, the second paragraph of the section lists three numbered subsections to the section's general

15

rule as set forth in the first paragraph. The list of subsections is connected with the disjunctive "or" prior to the third numeral. This grammatical structure implies that each subsection is its own exception to the section's general rule, and that Nationwide would only need to satisfy one of the three exceptions to escape the notice requirement of the first paragraph. On the other hand, the language of each subsection is not parallel. Subsection (i) begins with the word "to," whereas subsections (ii) and (iii) begin with the word "where." It is thus clear that subsection (i) modifies the introductory phrase, "This section shall not apply." But it is not clear whether subsections (ii) and (iii) modify the introductory clause or subsection (i). The disjunctive "or" lends support to reading these clauses as modifying the introductory language, but the dissimilar wording of subsections (ii) and (iii) to subsection (i) lends support to reading these clauses as modifying subsection (i).

The statute's legislative history sheds some light on this uncertainty. The statute was first proposed in the Virginia General Assembly without subsection (iii) and ended with the word "due." 1991 Journal of the House of Delegates 525. Subsection (iii) and the disjunctive "or" that precedes that subsection were added by amendment. Id. Without that amendment, therefore, the statute in its originally proposed form would naturally be read to include only one exception. To satisfy that exception, subsections

16

(i) and (ii) would both need to be met:  the subsections would be conjunctive rather than disjunctive in structure and subsection (ii) would clearly modify subsection (i).  That the General Assembly amended the statute by inserting a third subsection with parallel language to the second subsection implies that the third subsection also modifies subsection (i), and that the disjunctive "or" only disjoins subsections (ii) and (iii) and not all three subsections.  It is therefore more natural to read the second paragraph of § 38.2-232 as providing two exceptions, not three:  an insurer may be exempt from the notice requirement if it satisfies subsection (i) and (ii) or if it satisfies subsections (i) and (iii).

This conclusion accords with good public policy.  Requiring that statutorily-mandated notice be given to individual policyholders protects against the risk of an individual unwittingly losing coverage for missing a payment.  The Supreme Court of Virginia has noted implied legislative intent in another insurance context.  See American Interinsurance Exchange v. Lucy, 281 S.E.2d 891, 896 (Va. 1981) (perceiving "a legislative intent to provide specified procedural safeguards to an insured when his insurance policy is terminated against his wishes").  This same procedural safeguard is not necessitated for group policyholders because they may tend to be more sophisticated.  Thus, the likely intent of the General Assembly in enacting Va. Code § 38.2-232 was

to protect individual policyholders by mandating that insurers provide notice to individual policyholders as a procedural safeguard to losing insurance coverage.

Reagan's policy was an individual rather than a group policy; § 38.2-232's exceptions therefore do not apply. Nationwide must satisfy the notice requirement of § 38.2-232.

Russell argues that only the April 10, 2006 Life Billing Statement complies with Va. Code § 38.2-232's notice requirement. Nationwide agrees that the April 10, 2008 Life Billing Statement complies with Va. Code § 38.2-232, but additionally argues that the February Life Billing Statement and the Notice of Lapse also comply with Va. Code § 38.2-232's notice requirement.

The plain meaning of Va. Code § 38.2-232 makes clear that only the April 10, 2006 Life Billing Statement complies with the section. The section requires that written notice be given "prior to the date that the policy . . . *will* lapse for failure to pay premiums due." Va. Code. § 38.2-232 (emphasis added). That language implies (1) that a premium payment has been missed and (2) that there is a date certain on which the policy will lapse because of that missed payment. The word "will" grounds this analysis because a missed premium payment *will* lead to lapse of the policy at a specific time. On the other hand, if a payment has not yet been missed, then the policy *may* lapse - if no payment is timely made. Cf. Pennsylvania Nat. Mut. Cas. Ins. Co. v. Person, 297 S.E.2d 80,

18

82 (Ga. Ct. App. 1982) (holding that an insurance statement that stated that a policy would be cancelled on a specified date unless premiums are paid prior to that date, when the premium was not past due, was merely a demand for payment and not a notice of cancellation).

Thus, the Court holds that the language in the February Life Billing Statement does not satisfy the notice requirement of § 38.2-232. When Nationwide produced that statement, Reagan's policy was not certain to lapse because Reagan had not yet missed a payment. Furthermore, to hold otherwise - that language contained in a regularly issued premium statement like the February Life Billing Statement in this case - would render the notice requirement of § 38.2-232 toothless. Even without reading the terms of an insurance policy, it is common sense that failure to pay premiums in a timely fashion will lead to lapse of coverage. That is, however, all the language in the February Life Billing Statement says. The Virginia General Assembly, as noted _supra_, likely passed § 38.2-232 to require *additional* notice to protect individual policyholders from inadvertently or mistakenly failing to make a timely payment.

Similarly, the Court holds that the May 21, 2006 Notice of Lapse does not comply with § 38.2-232 because the Notice of Lapse notified Reagan that coverage had *already* lapsed - not that coverage *will* lapse.

19

The Court, however, holds that the April 10, 2006 Life Billing Statement does comply with § 38.2-232. That statement notes that the premium payment is "past due" (a premium payment has been missed) and that the policy "will lapse" if payment is not made by the end of grace period, April 20, 2006. Russell does not dispute that the April 10, 2006 statement satisfies the statutory requirement.

What this case ultimately boils down to, then, is whether Nationwide generated and mailed the April 10, 2006 Life Billing Statement, and whether Reagan received that statement. Here, the Court holds there is a genuine issue of material fact that must be left for the jury to decide.

To satisfy § 38.2-232's notice requirement, Nationwide must prove that Reagan "actually received" the notice. Cf. Villwock v. Insurance Co. Of North America/CIGNA, 468 S.E.2d 130, 134 (Va. 1996) (holding that actual receipt is required to effectuate cancellation of an insurance policy when the statute provides that an insurance policy may be cancelled by giving a certain number of days' notice to the insured). As Villwock held:

> Insurance companies typically meet this burden through application of the presumption that correspondence properly mailed is received by the addressee. In Virginia, the mailing of correspondence, properly addressed and stamped, raises a presumption of receipt of the correspondence by the address. Denial of receipt by the address raises an issue for the fact finder.

Id. at 134 n.4 (citations omitted).

20

Assuming, without holding, that the April 10, 2006 Life Billing Statement was generated, mailed, and properly addressed, and therefore that the presumption of actual receipt by Russell applies, Russell has denied that Reagan received that statement and has alleged certain circumstantial evidence to that effect.  That denial is sufficient to leave the issue of receipt to the fact finder.  Villwock, 468 S.E.2d at 134 n.4.   That result is the same whether the Court views "the inferences to be drawn from the underlying facts . . . in the light most favorable to" Russell or to Nationwide.  Matsushita, 475 U.S. at 587 (quotation omitted).

Finally, Nationwide argues that Russell did not timely respond to Nationwide's motion for summary judgment, and therefore the facts Nationwide alleges in its motion should be presumed to be true.[8]

Local Rule 7(F)(1) provides:  "Unless otherwise directed by the Court, the opposing party shall file a responsive brief and such supporting documents as are appropriate, within eleven (11) days after service."   "If a non-moving party fails to timely respond to the movant's motion for summary judgment, a court may not automatically enter a default judgment against the non-moving

---

[8] Nationwide first raised this argument in its reply brief in support of its motion for summary judgment; consequently, Russell has not had an opportunity to respond to this argument.  It appears to the Court, however, that pursuant to Federal Rule of Civil Procedure 6(d) and unless the parties have otherwise consented to electronic service, Russell had three (3) days in addition to the eleven (11) days provided under Local Rule 7(F)(1).

party." <u>Moore v. Southtrust Corp.</u>, 2005 WL 4663636 at *6 (E.D. Va. June 10, 2005). "Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law.'" <u>Custer v. Pan American Life Ins. Co.</u>, 12 F.3d 410, 416 (4th Cir. 1993). "Thus, the court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." <u>Id.</u>

Nationwide filed its motion for summary judgment on October 10, 2008. Russell did not file her response until October 24, 2008, which is outside the eleven day window provided by Local Rule 7(F)(1). Regardless, Russell already adequately disputed Nationwide's statement of facts when she filed her motion for summary judgment on September 29, 2008. Indeed, Russell's memorandum in opposition to Nationwide's motion for summary judgment refers the Court to the statement of facts Russell presented in her memorandum in support of her own, previously filed, motion for summary judgment. The Court therefore finds no merit to Nationwide's argument.

Therefore, the Court DENIES the parties' cross-motions for summary judgment with respect to the breach of contract claim.

ii.  Bad Faith Claim

Nationwide and Russell also both move for summary judgment on Russell's bad faith claim.

Because the Court has not decided in favor of Russell regarding the breach of contract claim and has left the matter to the jury, the Court cannot grant Russell's motion for summary judgment regarding the bad faith claim. As the Court noted supra, the bad faith claim is not an independent cause of action, and therefore Russell cannot succeed on the bad faith claim without first succeeding on the breach of contract claim. Accordingly, the Court DENIES Russell's motion for summary judgment on the bad faith claim.

On the other hand, it is possible for the Court to grant Nationwide's motion for summary judgment on the bad faith claim if Russell has not alleged sufficient facts to sustain its argument were Russell to succeed on its breach of contract claim.

Nationwide's cancellation of the policy and subsequent denial of liability was in good faith and was reasonable pursuant to the CUNA court's factors.  First, the first CUNA factor, that reasonable minds could differ "in the interpretation of policy provisions defining coverage and exclusions," CUNA, 374 S.E.2d at 727, does not apply to this case because both parties agree that Reagan was required to pay the premiums to remain insured and it is undisputed that no premiums were paid after December 20, 2005.

23

Second, Nationwide conducted a "reasonable investigation of the facts and circumstances underlying the insured's claim." Id. Voltz, a lead claims manager at Nationwide, investigated Russell's claim for payment. Voltz inquired whether the policy had lapsed on Nationwide's computer system. Discovering that the policy had in fact lapsed, Voltz double-checked the computer's records by calling both Reagan's insurance agent, H.P. Lucas & Sons, Inc., and the person paying Reagan's premiums, Phillips at Seaford Baptist Church. Neither the insurance agent nor Phillips contradicted that Reagan had stopped making payments. Therefore, the Courts find the investigation was reasonable in its scope. Third, the Court cannot determine at this time whether "the evidence discovered reasonably supports a denial of liability," id., because there is a genuine issue of material fact regarding whether Nationwide sent Reagan the statutorily-mandated notice of pending lapse. Fourth, and for similar reasons, there is a "reasonably debatable question of . . . fact" regarding whether Nationwide sent, and Reagan actually received, the April 10, 2006 Life Billing Statement. Fifth, there is no evidence to suggest that Nationwide's "refusal to pay was used merely as a tool in settlement negotiations." Taken together, these factors demonstrate that Nationwide acted reasonably and in good faith in cancelling Reagan's policy and denying coverage, even if the jury ultimately concludes those actions were in error and in breach of the policy and Va. Code § 38.2-232. Id.

24

Accordingly, the Court GRANTS Nationwide's motion for summary judgment regarding Russell's bad faith claim.

### III. <u>Conclusion</u>

For the foregoing reasons, the Court (1) DENIES Nationwide's motion to dismiss Russell's bad faith claim; (2) DENIES Nationwide's motion to strike certain material from Russell's Amended Complaint; (3) DENIES Russell's motion for summary judgment; and (4) DENIES IN PART AND GRANTS IN PART Nationwide's motion for summary judgment. Trial is set for November 18, 2008.


IT IS SO ORDERED.



UNITED STATES MAGISTRATE JUDGE


Norfolk, Virginia


November 17, 2008